UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION RECEIVED

| | |
|---|---|
| LONG EXCAVATING & RECYCLING, LLC; BROCK CODY; CHARLES STEWART LONG, JR., | ] ] ] ] ] |
| Plaintiffs, | ] ] |
| v. | ] ] |
| BATES HEWETT & FLOYD INSURANCE AGENCY; DEE DEE GERMANY | ] ] ] ] |
| Defendants | ] |

2017 JUL 28 P 1: 32

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

CASE NO. 2:17-cv-510

## NOTICE OF REMOVAL

**PLEASE TAKE NOTICE** that Defendants designated as Bates, Hewett & Floyd Insurance Agency ("Bates") and Dee Dee Germany ("Germany") appearing solely for purposes of filing this notice, reserving all rights, defenses, exceptions and claims and without waiver thereof, hereby remove to this Court the state-court action described below pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, on the following grounds:

### I. STATEMENT OF JURISDICTION

1.     This civil action falls under this Court's original jurisdiction under 28 U.S.C. §1332 (diversity of citizenship) and is one that may be removed to this Court by the Defendants in accordance with the provisions of 28 U.S.C. § 1441 *et seq.* in that it is a civil action where there is complete diversity among the parties and where the amount in controversy exceeds $75,000, exclusive of interest and costs.

1

2.      Removal of this action to this Court is proper under 28 U.S.C. § 1446(a) because this Court is the United States District Court for the District and division within which the removed state-court action was pending.  28 U.S.C. § 1441(a).

3.      As required by 28 U.S.C. § 1446(a), the following documents are attached hereto and are incorporated herein by reference:

Exhibit 1:     Index of matters being filed;

Exhibit 2:     Pleadings asserting causes of action filed in the state-court action;

Exhibit 3:     Copies of all executed process and all process, pleadings and orders served in the case;

Exhibit 4:     The docket sheet of the state-court action;

Exhibit 5:     Affidavit of Dee Dee Germany;

Exhibit 6:     Affidavit of Charles Benjamin Bates, III;

Exhibit 7:     Arch Insurance Group Policy; and

Exhibit 8:     Notice of Notice of Removal filed in Circuit Court of Bullock County, Alabama.

4.      This notice of removal is filed pursuant to 28 U.S.C. § 1446(b)(1), as Defendants remove this matter within 30 days of the receipt of the initial pleading setting forth the claim or relief upon which such action or proceeding is based.  Defendant Bates was served with the Complaint on July 5, 2017.  (Exhibit 3, Service of Process).  Defendant Germany was served on June 30, 2017.  (Exhibit 3, Service of Process).

## II. STATEMENT OF FACTS

5.      The Plaintiffs, Long Excavating & Recycling, LLC ("Long Excavating"), Brock Cody ("Cody") and Charles Stewart Long, Jr. ("Long") initiated this action on June 21, 2017

with the filing of their Complaint styled *Long Excavating & Recycling LLC, et. al. v. Bates, Hewett & Floyd Insurance Agency, et. al.*, case #CV-2017-900046 in the Circuit Court of Bullock County, Alabama. (Exhibit 2, Complaint).

6.      Plaintiffs are resident citizens of Alabama. (Exhibit 2, Complaint at ¶¶ 1-3).

7.      Defendant Bates is a Florida corporation with its principle place of business in Pulatka, Florida. (Exhibit 6, Bates Affidavit at ¶ 2). Germany is a resident citizen of the State of Florida. (Exhibit 5, Germany Affidavit at ¶ 1).

### A.  Underlying Facts

8.      On October 20, 2016, a 2007 Hydro-Ax owned by Long Excavating was totally destroyed by fire. (Exhibit 2, Complaint at ¶ 39).

9.      At the time of the October 20, 2017 fire loss, the Plaintiffs contend that the Defendants had represented to the Plaintiffs that the 2007 Hydro-Ax was insured under a policy of insurance issued by Arch Insurance Group ("Arch"). (Exhibit 2, Complaint at ¶ 10-11, 29-33).

10.      The Plaintiffs allege that the Defendants were notified on October 14, 2016 that the coverage that had previously been afforded by Arch to Long Excavating was no longer in effect due to Long Excavating's failure to make timely premium payments.  (Exhibit 2, Complaint at ¶ 34).

11.      Finally, the Plaintiffs allege that the Defendants failed to notify the Plaintiffs at any time from October 14, 2016 through the date of the October 20, 2016 fire loss that Arch was no longer providing coverage to Long Excavating, and that, as a result, the 2007 Hydro-Ax was not insured at the time of the October 20, 2016 loss. (Exhibit 2, Complaint at ¶ 36-38).

12.     Prior to the cancellation of the Arch policy, the 2007 Hydro-Ax at issue was insured for $40,000, and as noted above was completely destroyed as a result of the October 20, 2016 fire loss.  (Exhibit 7, Policy at Schedule of Personal Property).

13.     The Hydro-Ax was insured in the amount of $40,000 at the request of Plaintiff Brock Cody.  (Exhibit 5, Germany Affidavit at ¶ 5).

## B. Claims Asserted

14.     Long Excavating has filed a three count complaint, which sets forth the following causes of action:

- Count I- Breach of Contract.  Plaintiffs allege that they entered into a contract with the Defendants wherein the Defendants were to provide insurance coverage to the Plaintiffs. (Exhibit 2, Complaint at ¶ 44).  Plaintiffs further allege that Defendants "had a duty to notify Plaintiffs in the event their insurance coverage lapsed and would not be reinstated," and that Defendants beached this duty by failing to procure insurance for Plaintiff and/or by failing to notify Plaintiffs that the insurance coverage through Arch had cancelled by virtue of Plaintiffs failure to make the necessary premium payments. (Exhibit 2, Complaint at ¶ 45-46).

- Count II- Fraud.  Plaintiffs aver that "Defendants fraudulently misrepresented to the Plaintiffs that they had insurance coverage for their logging operation and their logging equipment," and that Defendants "fraudulently misrepresented that in the event Defendant Germany or Bates [Hewett] learned that insurance coverage for Long Excavating would not be reinstated, the Plaintiffs would be properly and timely notified of such development." (Exhibit 2, Complaint at ¶ 50-51).  This misrepresentation claim asserts a knowing, intentional misrepresentation, as it is alleged that the misrepresentations "were false and the Defendants knew that they were false." (Exhibit 2, Complaint at ¶ 52).

- Count III- Negligence, Wantonness and/or Recklessness.  The Plaintiffs claim that the Defendants "negligently, wantonly, and/or recklessly misrepresented to Brock Cody and Long Excavating that Long Excavating had insurance coverage for their logging operation and their logging equipment" and "that in the event Germany or Bates learned that insurance coverage for Long Excavating would not be reinstated, the Plaintiffs would be properly and timely notified of such development." (Exhibit 2, Complaint at ¶ 56-57).

## C.  Damages Claimed

15.     As a threshold matter, the Plaintiffs' ad damnum seeks an unspecified amount for compensatory and punitive damages.

16.     With respect to the breach of contact claim, the Plaintiffs seek recovery of compensatory damages for the value of the Hydro-Ax, and also mental anguish and lost profits/income.  (Exhibit 2, Complaint at ¶ 48).

17.     The Plaintiffs seek unidentified and unspecified recovery of compensatory and punitive damages based upon the misrepresentation claims asserted in Counts II and III.  (Exhibit 2, Complaint at Counts II and III).

## III.  BASIS OF JURISDICTION

18.     This Court has jurisdiction over this matter pursuant to §1332, as the properly named parties are completely diverse, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## A.  Diversity

19.     "A district court may exercise diversity jurisdiction only if there is complete diversity between the parties, that is, no two adverse parties are citizens of the same state." *Ranbaxy Labs. Inc. v. First Databank, Inc.*, 826 F.3d 1334, 1338 (11th Cir. 2016) (citing *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978)).

20.     As noted above, Plaintiffs are all resident citizens of Alabama.

21.     Defendant Bates is incorporated in Florida and has its principal place of business in Florida.  Defendant Germany is a resident citizen of Florida.

22.     There is, therefore, complete diversity.

5

## B. Amount in Controversy

23.     Federal district courts have original jurisdiction of civil actions when there is diversity between the Plaintiff and Defendants, and where "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332.

24.     This matter was removed to this Court pursuant to § 1446(b)(1).

### 1. Amount in Controversy Analyzed Under Preponderance of Evidence Standard

25.     Because this matter is removed to this Court pursuant to § 1332(a), the amount in controversy requirement is analyzed pursuant to § 1446(c)(2), which provides as follows:

(2)     If removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that—

(A) the notice of removal may assert the amount in controversy if the initial pleading seeks--

(i) nonmonetary relief; or

(ii) a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded; and

(B) removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).

28 U.S.C. § 1446.

6

26.     The preponderance of the evidence standard is appropriate in the matter at hand

pursuant to §1446(c)(2)[1] and because the Plaintiffs do not specify the amount of damages sought

in their Complaint.

> If a plaintiff makes "an unspecified demand for damages in state court, a removing
> defendant must prove by a preponderance of the evidence that the amount in controversy
> more likely than not exceeds the ... jurisdictional requirement." *Tapscott v. MS Dealer
> Service Corp.*, 77 F.3d 1353, 1357 (11th Cir.1996*), abrogated on other grounds by
> Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir.2000). In some cases, this burden
> requires the removing defendant to provide additional evidence demonstrating that
> removal is proper. *See, e.g., Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744 (11th
> Cir.2010). In other cases, however, it may be "facially apparent" from the pleading itself
> that the amount in controversy exceeds the jurisdictional minimum, even when "the
> complaint does not claim a specific amount of damages." *See id.* at 754 (quoting *Williams
> v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir.2001)).

*Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010)(footnote omitted).

27.     With respect to the determination of whether it is more likely than not that the

amount in controversy exceeds $75,000, this Court can consider any evidence presented by the

parties, and may also use its own common sense and judicial experience to determine whether it

is "facially apparent" from the complaint that the amount in controversy requirement is met.

> "When the complaint does not claim a specific amount of damages, removal from state
> court is [jurisdictionally] proper if it is facially apparent from the complaint that the
> amount in controversy exceeds the jurisdictional requirement." *Williams*, 269 F.3d at
> 1319. "If the jurisdictional amount is not facially apparent from the complaint, the court
> should look to the notice of removal and may require evidence relevant to the amount in
> controversy at the time the case was removed." *Id.; see also, e.g.,* 16 James Wm. Moore
> et al., *Moore's Federal Practice* § 107.14[2][g], at 107–86.4 to 107–86.5 (3d ed. 2010)
> ("When determining if the defendant has satisfied this burden [to establish jurisdiction by
> a preponderance of the evidence], the court will consider first whether it is facially

---

[1] Alabama law permits recovery in excess of the amount demanded in the ad damnum. *Breland v. Ford,* 693 So. 2d
393, 397 (Ala. 1996)("It is well settled that a litigant seeking general damages for personal injuries, such as
compensation for physical and emotional pain and suffering, may recover an amount in excess of the amount
contained in the ad damnum clause of the complaint"); *Fuller v. Preferred Risk Life Ins. Co.*, 577 So. 2d 878, 884
(Ala. 1991)(Concerning trial court's remittitur of punitive damage award to amount demanded in ad damnum, "[t]he
trial judge erred in reducing the jury verdict to the amount claimed in the complaint").

apparent from the complaint that the jurisdictional amount is in controversy. If it is not, the court may consider facts alleged in the notice of removal, judicial admissions made by the plaintiffs, non-sworn letters submitted to the court, or other summary judgment type evidence that may reveal that the amount in controversy requirement is satisfied.").

*Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010).

28.    The Eleventh Circuit has made clear that, although the burden is placed upon the defendant to establish the amount in controversy, a defendant need not establish the jurisdictional threshold to an absolute certainty.   Further, in assessing whether a defendant has presented sufficient evidence that the amount in controversy exceeds $75,000, the Court does not engage in impermissible speculation by employing its own common sense experiences in evaluating the claims and associated damages and determining whether the amount in controversy requirement is met.

> But *Lowery* did not say, much less purport to hold, that the use of deduction, inference, or other extrapolation of the amount in controversy is impermissible, as some district courts have thought. That was not the question in *Lowery*. Instead, the question was how to apply the preponderance of the evidence standard in the "fact-free context" of that particular case. The answer we gave is that without facts or specific allegations, the amount in controversy could be "divined [only] by looking at the stars"—only through speculation—and that is impermissible.
>
> A different question is presented, however, when a removing defendant makes specific factual allegations establishing jurisdiction and can support them (if challenged by the plaintiff or the court) with evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations. That kind of reasoning is not akin to conjecture, speculation, or star gazing.
>
> The point is that a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it. The law does not demand perfect knowledge or depend any less on reasonable inferences and deductions than we all do in everyday life. As Justice Holmes observed, "all life is an experiment. Every year if not every day we have to wager our salvation upon some prophecy based upon imperfect knowledge."

*Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 753–54 (11th Cir. 2010)(citations omitted).

8

29.     The Eleventh Circuit explained why the use of common sense and judicial experience concerning the claims asserted is necessary, and not just beneficial, particularly with respect to the more nebulous and indefinite damages that may be awarded in connection with punitive damage claims and claims wherein damages for mental anguish or emotional distress is sought.

> Sometimes, when a plaintiff's allegations are viewed in light of the award factors [set forth in the wrongful death jury charges], it will be clear that the jurisdictional minimum is likely met. In such circumstances, preventing a district judge from acknowledging the value of the claim, merely because it is unspecified by the plaintiff, would force the court to abdicate its statutory right to hear the case. This rule would reward plaintiffs for employing the kinds of manipulative devices against which the Supreme Court has admonished us to be vigilant. *Pretka*, 608 F.3d at 766.

> For instance, *a plaintiff could "defeat federal jurisdiction simply by drafting his pleadings in a way that did not specify an approximate value of the claims and thereafter provide the defendant with no details on the value of the claim." Id.* Plaintiffs skilled in this form of artful pleading could, with this "trick," simply "make federal jurisdiction disappear." *See id.* Indeed, *if courts were to rely solely on a plaintiff's damage statements, as [the plaintiff] suggests, it is difficult to imagine a punitive damages suit that could be removed against a plaintiff's wishes.* Both policy and precedent counsel against rewarding such obfuscating tactics.

> Thus, when a district court can determine, relying on its judicial experience and common sense, that a claim satisfies the amount-in-controversy requirements, it need not give credence to a plaintiff's representation that the value of the claim is indeterminate. Otherwise, a defendant could wrongly be denied the removal to which it is entitled.

*Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1064 (11th Cir. 2010)(emphasis added).

30.     Similarly, in *Pretka*, the Court addressed the plaintiffs' contention that any factual basis concerning the plaintiffs' claim for unliquidated damages must be supplied by the plaintiffs in accordance with the "receipt from the plaintiff rule." In rejecting this argument, and holding that evidence submitted by a defendant as to the amount in controversy was to be considered, the Court noted that such a rule as the one put forth by the plaintiffs would "undermine the purpose

9

of the removal process."

> The interpretation of *McNutt* in the *Lowery* dicta would also undermine the purpose of the removal process, which "was created by Congress to protect defendants." *Legg v. Wyeth*, 428 F.3d 1317, 1325 (11th Cir.2005). "Congress did not extend such protection with one hand, and with the other give plaintiffs a bag of tricks to overcome it." *Id.* (quotation marks and citation omitted). While we construe removal statutes narrowly, we do not rewrite them to add restrictions that cannot be found in their language and that would run counter to their purposes. *See Tenn. Valley Auth. v. Whitman*, 336 F.3d 1236, 1255 (11th Cir.2003) ("[N]o canon of statutory interpretation can trump the unambiguous language of a statute."). As the Supreme Court long ago admonished, "the Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court as to permit the state courts, in proper cases, to retain their own jurisdiction." *Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 186, 27 S.Ct. 184, 188, 51 L.Ed. 430 (1907); see also Legg, 428 F.3d at 1325.
>
> The *Lowery* opinion's dicta would provide plaintiffs with a trick by which they could make federal jurisdiction disappear. *A diverse plaintiff could defeat federal jurisdiction simply by drafting his pleadings in a way that did not specify an approximate value of the claims and thereafter provide the defendant with no details on the value of the claim.* That would subject the defendant's right to remove to the caprice of the plaintiff, which the Supreme Court has said in another context that we should not do.

*Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 766 (11th Cir. 2010)(citations omitted)(emphasis added).

31.     Implicit in the Eleventh Circuit's rationale in *Roe* and *Pretka* is that in instances where a plaintiff files a bare bones complaint, devoid of any facts or allegations that would shed any light upon the damages sought or the actual amount in controversy, evidence submitted by a defendant as to the amount in controversy, as well as the judicial experience and common sense of the district court, become all the more important, as these are the only two aspects from which the amount in controversy can be ascertained.  Every action seeking monetary damages has a value, and if a plaintiff elects to withhold any evidence that he or she has concerning that value, the value advanced by a defendant becomes even more compelling, particularly in light of the

10

policy considerations set forth above, and particularly in light of the fact that the plaintiff has not presented any evidence to rebut the evidence presented by the defendant.

2.  Amount in Controversy is Satisfied

32.    In the matter at hand, the Defendants have presented evidence of the amount at issue under the insurance contract through Arch, as well as evidence concerning the nature of the mental anguish claims and punitive damage claims.  Based upon this evidence and the Court's ability to apply its own judicial experience concerning the amount at issue with respect to the claims asserted, the amount in controversy requirement is met.

33.    Further, with respect to the Plaintiffs' Complaint, nothing is presented that would rebut the evidence presented by the Defendants concerning the amount in controversy.  In fact, the only detail that the Plaintiffs provide concerning the damages at issue is that "Long's 2007 Hydro-Ax MDL #2470 S#PB19435 was totally destroyed by fire."  (Exhibit 2, Complaint at ¶39).  While lost profits and income are claimed, the Plaintiffs have elected to withhold any information concerning the nature of that claim, including the length of time they claim Long Excavating was affected by the loss of the Hydro-Ax or any indication as to the amount of income or profits that were lost.  Similarly, while mental anguish damages are claimed, no factual basis is given for this claim.[2]  The Plaintiffs have provided factual allegations concerning their claim that punitive damages are appropriate.

---

[2] As will be discussed in more detail below, although Plaintiffs do not provide any specific information concerning the mental anguish suffered, given the allegations of the Complaint, Defendants are able to ascertain some aspects of this element of damages.

### (a) Specific, Identifiable Damages Claimed

34.     The value placed upon the Hydro-Ax by Plaintiff Brock Cody was $40,000. Based upon Plaintiff Cody's statement of value, the Hydro-Ax was, therefore, insured for $40,000.   The Hydro-Ax was completely and totally destroyed by fire.   The amount in controversy as to the Hydro-Ax is $40,000.

35.     With respect to the Plaintiffs' claim of lost income and/or profits, Plaintiffs have not provided any facts concerning the amount of the lost income or profits, the length of time that the income and profits were lost or any other information that could conceivably shed any light on the amount of damages claimed as lost profits or income.

### (b) Mental Anguish Damages and Punitive Damages

36.     The Plaintiffs have also asserted claims of mental anguish and punitive damages, which must also be considered in analyzing the amount in controversy.[3]

37.     In *Duck Head Apparel Co., Inc. v. Hoots*, 659 So.2d 897, the Alabama Supreme Court discussed the applicable law concerning mental anguish awards, where the plaintiffs asserted claims of fraud and breach of contract and where the plaintiffs also claimed that their ability to earn income was damaged as a result of the conduct of the defendant.

"Black's Law Dictionary defines 'mental anguish' as follows:

> " '... an element of damages, it includes the mental suffering resulting from the excitation of the more poignant and painful emotions, such as grief, severe disappointment, indignation, wounded pride, shame, public humiliation, despair,

---

[3] Defendants by no means agree that Plaintiffs are entitled to recover these damages. However, they are properly pled and therefore, must be considered, regardless of the likelihood that the Plaintiffs will ultimately prevail as to these claimed damages. "[T]he plaintiffs' likelihood of success on the merits is largely irrelevant to the court's jurisdiction because the pertinent question is what is in controversy in the case, not how much the plaintiffs are ultimately likely to recover." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010)(citations omitted).

etc.'

"When assessing the question of excessiveness of compensatory damages, the focus is on the Plaintiff, as stated in *Pitt v. Century II, Inc.*, 631 So.2d 235 (Ala.1993):

"'A court reviewing a verdict for compensatory damages must determine what amount a jury, in its discretion, may award, viewing the evidence from the plaintiff's perspective. *Bridges v. Clements*, 580 So.2d 1346, 1349 (Ala.1991).'

"There is no fixed standard for ascertainment of compensatory damages for mental anguish. A determination of how much to award is left to the sound discretion of the jury, subject only to the correction of the Court for clear abuse or passionate exercise. *Alabama Power Co. v. Mosley*, 294 Ala. 394, 318 So.2d 260 (1975).

*Duck Head Apparel Co. v. Hoots*, 659 So. 2d 897, 907 (Ala. 1995)(Alabama Supreme Court conditioned affirmance upon the plaintiffs acceptance of a remittitur of the compensatory damage awards of the three plaintiffs, which consisted solely of damages attributable to mental anguish, from $4 million, $2 million and $1 million to $2 million, $1 million and $500,000, respectively).

38.     Mental anguish damages are claimed under the breach of contract claim in the matter at hand.  Although there is no specific reference to the cause or extent of the mental anguish, the Plaintiffs' Complaint does provide some insight as to the nature of the mental anguish damages claimed. First of all, the Plaintiffs claim that as a result of the Defendants' acts or omissions, Plaintiffs have lost profits and income and have otherwise lost money.  Secondly, Plaintiffs allege that the mental anguish that they have incurred resulted from intentional acts of the Defendants.  Specifically, Plaintiffs allege that the Defendants knowingly made false and untrue statements to the Plaintiffs, which resulted in Plaintiffs submitting $1,763.72 in premiums for an insurance policy that was not reinstated.  Thus, the Plaintiffs claimed to have undergone financial difficulties as a result of the intentional acts of the Defendants.

39.     With respect to the punitive damages, such damages are only awarded under circumstances where the defendant has engaged in reprehensible conduct.

(a) Punitive damages may not be awarded in any civil action, except civil actions for wrongful death pursuant to Sections 6-5-391 and 6-5-410, other than in a tort action where it is proven by clear and convincing evidence that the *defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff*. Nothing contained in this article is to be construed as creating any claim for punitive damages which is not now present under the law of the State of Alabama.

(b) As used in this article, the following definitions shall apply:

(1) Fraud. An intentional misrepresentation, deceit, or concealment of a material fact the concealing party had a duty to disclose, which was *gross, oppressive, or malicious and committed with the intention on the part of the defendant of thereby depriving a person or entity of property or legal rights or otherwise causing injury*.

(2) Malice. The intentional doing of a wrongful act without just cause or excuse, either:

a. *With an intent to injure* the person or property of another person or entity, or

b. Under such circumstances that the law will imply an *evil intent*.

(3) Wantonness. Conduct which is carried on with a *reckless or conscious disregard of the rights or safety of others*.

(4) Clear and convincing evidence. Evidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt.

(5) Oppression. Subjecting a person to *cruel and unjust hardship in conscious disregard of that person's rights*.

*Ala. Code* § 6-11-20 (emphasis added).

40.     The Plaintiffs have asserted the following allegations against the Defendants in

14

support of their contention that punitive damages are awardable:

- The Defendants "fraudulently misrepresented to the Plaintiffs that they had insurance coverage" and "that in the event Defendants Germany or Bates [Hewett] learned that insurance coverage for Long Excavating would not be reinstated, the Plaintiffs would be properly and timely notified of such development. (Exhibit 2, Complaint at ¶ 50-51).

- In reliance upon this misrepresentation, "Brock Cody made payment of $1,763.72" to satisfy the outstanding premium amount. (Exhibit 2, Complaint at ¶ 25, 28).

- "On October 14, 2016, unbeknownst to Plaintiffs, [the general agent for Arch] notified Dee Dee Germany that, despite the premium payment by Brock Cody on September 30, 2016, Long Excavating's insurance coverage would not be reinstated, and that Long had no insurance coverage." (Exhibit 2, Complaint at ¶ 35).

- "At no time prior to October 20, 2016, was Brock Cody or Charles Stewart Long, Jr. notified that the insurance coverage for Long Excavating was not reinstated, and that as a result Long Excavating had no insurance coverage." (Exhibit 2, Complaint at ¶ 37).

- The misrepresentations made by the Defendants were not based upon mistake, inadvertence or neglect. "The misrepresentations by the Defendants were false and the Defendants knew that they were false." (Exhibit 2, Complaint at ¶ 52).

- Finally, implicit in the Plaintiffs demand for punitive damages is the Plaintiffs' claim, as per the requirements of § 6-11-20, that the misrepresentation and/or concealment of the Defendants was done intentionally and was "gross, oppressive, or malicious and committed with the intention on the part of the defendant of thereby depriving a person or entity of property or legal rights or otherwise causing injury."

41.     Thus, in order for the Plaintiffs to prevail on the claims that would permit punitive damages, the jury must determine that the Defendants knew that the Plaintiffs would not be able to have the policy reinstated, but nevertheless told the Plaintiffs that payment of the premium would allow the policy to be reinstated, and did so with the intent to deprive the plaintiffs of their property or otherwise injure them.  If a jury were to determine that this occurred, and for purposes of determining the amount in controversy according to the Eleventh Circuit opinion in *Pretka* that must be presumed, it is more likely than not that a jury would award the Plaintiffs

punitive damages in an amount at least equal to the $40,000 in identifiable compensatory damages.

*(c)  Totality of Damages Sought Satisfies Amount in Controversy*

42.     First of all, there is no question but that $40,000 is at issue in this case, given the fact that the Hydro-Ax, which would have been insured for $40,000 had the Arch policy been in effect, was completely and totally destroyed.  The issue then turns to whether the amount in controversy as it relates to the claims mental anguish and punitive damages is in excess of $35,000.

43.     As far as the mental anguish and punitive damage claims are concerned, Plaintiffs contend that the knowing, intentional fraudulent acts of the Defendants have caused a $40,000 piece of equipment to be destroyed with no insurance available to replace it and also caused their business to suffer, which necessarily creates financial burdens upon the Plaintiffs.  Under the preponderance of the evidence standard, the Defendants must establish that it is more likely than not that at least $35,000 is at issue concerning the mental anguish claim and the punitive damage claim.  This Court need not speculate or "gaze into the stars" to appreciate the fact that more than $35,000 is at issue if the jury accepts the facts that these defendants intentionally mislead the Plaintiffs, thereby causing their business to suffer, which in turn would create financial stress and mental anguish.  Common sense and judicial experience clearly indicates that at least $35,000 is at issue under these circumstances.

44.     Defendants acknowledge that previous verdicts are not outcome determinative, but they can be helpful in analyzing whether the amount in controversy is met where the facts of the cited cases are analogous to the facts of matter at hand.  The facts of the case of *Joseph Land*

16

& *Co., Inc. v. Gresham*, 603 So.2d 923 (Ala. 1992) are nearly identical to the facts before this

Court and are as follows:

> David Gresham testified that he and Martha Gresham submitted an application to Land &
> Company, through Browning, seeking coverage under Land & Company's group
> collision insurance policy. Martha Gresham testified that subsequent to the Greshams'
> discussions with Browning, and after they had signed a lease with Land & Company, she
> telephoned Browning to inquire as to whether the tractor-trailer had been insured under
> Land & Company's group policy. She testified that Browning stated: "Don't worry, it's
> being taken care of, they're going to send it [a copy of the policy] to you; it just takes
> procedure." The Greshams' tractor-trailer was later damaged in an accident and the
> Greshams' driver immediately contacted Browning, who told him that the truck was
> covered. The record indicates that Browning subsequently contacted Land & Company
> and attempted to obtain retroactive coverage for the Greshams. Although Browning
> assured the Greshams following the accident that their tractor-trailer was covered, the
> Greshams ultimately discovered that they, in fact, had no coverage under Land &
> Company's group policy.
>
> The Greshams sued Land & Company and Browning, alleging that Browning had agreed
> to obtain collision insurance for them and that he had failed to do so, that Browning had
> intentionally misrepresented to them that they had collision coverage and suppressed the
> fact that they did not, and that they had relied on Browning's misrepresentation and
> silence to their detriment by not obtaining insurance elsewhere. The breach of contract
> and fraud claims against Land & Company were based on allegations that Browning had
> dealt with the Greshams as an agent of Land & Company. The Greshams sought to
> recover both compensatory and punitive damages. The case was tried to a jury, which
> returned a verdict in favor of the Greshams for $25,000 in compensatory damages and
> $75,000 in punitive damages.

*Id.* at 925 (Ala. 1992).

The Defendants appealed, arguing, among other things, that the award for mental anguish

was not supported by the evidence.  The Court disagreed, stating as follows:

> Browning contends that the evidence was insufficient to warrant submission of both of
> the Greshams' claims against him to a jury. In addition, he maintains that there was no
> evidentiary basis for the compensatory damages award and that the trial court erroneously
> instructed the jury. The record shows, however, that Browning did not move for a
> judgment notwithstanding the verdict; therefore, he is precluded from challenging the
> sufficiency of the evidence on appeal. *Great Atlantic & Pacific Tea Co. v. Sealy*, 374
> So.2d 877 (Ala.1979). ***Furthermore, there was evidence to support the $25,000***

17

*compensatory damages award. The Greshams presented evidence tending to show that they had suffered a loss of $6,000 on their tractor-trailer; that they had lost income; and that Martha Gresham had suffered mental anguish as a result of her dealings with Browning.* Finally, Browning did not specifically object to the trial court's instructions so as to preserve any error for review on appeal. See Rule 51, A.R.Civ.P. The judgment is, therefore, due to be affirmed as to Browning.

Joseph Land & Co. v. Gresham, 603 So. 2d 923, 927–28 (Ala. 1992)(emphasis added).

45.    Given the information set forth above, coupled with the fact that the Plaintiffs' Complaint, by virtue of the fact that it contains little to no information concerning the specifics of the damages claimed, does nothing to rebut the Defendants' contention that the amount in controversy exceeds $75,000, Defendants have established that the amount in controversy more likely than not exceeds $75,000, exclusive of interests and costs.  The case, therefore, is properly before this Court.  *See Tatum v. ADT Sec. Servs., Inc.,* 2012 WL 917316 (M.D. Ala. 2012)(Amount in controversy satisfied in breach of contract, fraud and negligence/wantonness claim where plaintiff sought unspecified amounts for mental anguish and punitive damages in connection with lost income/profits of at least $23,000); *Owens v. Life Insurance Co. of Ga.,* 289 F.Supp.2d 1319 (2003)(Plaintiffs motion to remand case to Bullock County denied, where plaintiff sought unspecified compensatory and punitive damages in connection with breach of contract and fraud claims).

## IV.  PROCEDURAL NOTICE

46.    The Defendants have given notice of the removal to all adverse parties by way of the filing of the Notice of Notice of Removal with the Circuit Court of Bullock County, Alabama to effect the removal of this action to this Court, in conformity with 28 U.S.C. § 1446(d). (Exhibit 8, Notice of Notice of Removal).

47.     No previous application has been made for the relief requested herein.

48.     If any question arises regarding the propriety of the removal of this action, the Defendants respectfully request this Court the opportunity to present a brief and/or oral argument in support of their position that this case is removable.

49.     The Defendants reserve the right to amend or supplement this Notice of Removal.

WHEREFORE, the Defendants hereby give notice that the above entitled action is removed from the Circuit Court of Bullock County, Alabama to the United States District Court for the Middle District of Alabama, Northern Division.

W.H. Brittain, II (BRI012)
W. Evans Brittain (BRI038)
Attorney for Bates Hewett & Floyd
Insurance Agency and Dee Dee Germany

OF COUNSEL:
Ball, Ball, Matthews & Novak, P.A.
P.O. Box 2148
Montgomery, Alabama  36102-2148
Telephone (334) 387-7680
Telefax (334) 387-3222
ebrittain@ball-ball.com

19

## CERTIFICATE OF SERVICE

I hereby certify that on this July 28, 2017, I hand filed the foregoing with the Clerk of the Court and that the foregoing shall also be mailed via first class mail to the following:

S. Mark Andrews
Morris, Cary, Andrews,
Talmadge & Driggers, LLC
P.O. Box 1649
Dothan, Alabama 36302

OF COUNSEL