# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| LONG EXCAVATING & RECYCLING, LLC, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 2:17-cv-510-DAB ) |
| BATES HEWETT & FLOYD INSURANCE AGENCY, *et al.*, | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Long Excavating & Recycling, LLC, Brock Cody, and Charles Stewart Long, Jr., sue Defendants, Bates Hewett & Floyd Insurance Agency, Dee Dee Germany, and Westfield Bank, FSB, for breach of contract, fraud, negligence, wantonness and/or recklessness. (Doc. 52). Before the court is Defendant Westfield Bank, FSB's Motion to Dismiss the Second Amended Complaint. (Doc. 54). Plaintiffs assert a single claim for breach of contract against Westfield Bank, FSB. (Doc. 52 at 7–10). The matter has been fully briefed by the parties, and the court heard argument on September 24, 2018. **For the reasons that follow, the court grants in part and denies in part Westfield Bank, FSB's motion.**

## I. Jurisdiction

This matter was removed to this court on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332(a). The parties do not contest personal jurisdiction. Defendants sought to change venue to the Southern Division of the Middle District, but that motion was denied without prejudice. (Docs. 3, 11).

## II. Background and Statement of Facts

On June 21, 2017, Plaintiffs initiated this action by the filing of a three-count complaint in Bullock County, Alabama Circuit Court against Defendants, Bates Hewett & Floyd Insurance Agency[1] and its agent employee, Dee Dee Germany. (Doc. 1-9). On July 28, 2017, Defendants removed the case to this court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, on the basis of diversity of citizenship and an amount in controversy exceeding $75,000. (Doc. 1).

Defendants moved to transfer the case to the Southern Division of the Middle District of Alabama because none of the parties reside in the Northern Division. (Doc. 3). Although Defendants acknowledge in the motion to transfer that the subject fire loss occurred in Bullock County, which is in the Northern Division, they nevertheless argue that the witnesses, documents, and conversations are located or occurred elsewhere. The court denied the motion without prejudice. (Doc. 11).

After Defendants answered the complaint (Doc. 27), the parties jointly moved to amend their pleadings to add Westfield Bank, FSB as a party defendant, which the court granted. (Docs. 28, 29). Thereafter, Plaintiffs filed a second amended complaint on June 19, 2018. (Doc. 52). Plaintiffs allege that Brock Cody and Charles Stewart Long, Jr., are the owners and sole members of Long Recycling Excavating, LLC ("Long Excavating"), which is a logging business. (Doc. 52, ¶¶ 7, 8). Long Excavating contracted to perform logging work in Bullock County, Alabama. *Id.* ¶ 8. As part of the terms of the logging contract, Long Excavating was required to procure and maintain insurance coverage for its equipment and logging activities in the cutting of a timber tract in Bullock County. *Id.* ¶ 9. Plaintiffs, Brock Cody and Charles Long, Jr., obtained insurance coverage on behalf of Long Excavating through Bates Hewett & Floyd Insurance Agency

---

[1] In its motion to transfer venue, Defendant states its correct name is Bates & Hewett, Inc. (Doc. 3 at 1).

2

("Bates"), an insurance agency located in Palatka, Florida, and its agent, Defendant Dee Germany. *Id.* ¶¶ 10, 11. Bates brokered insurance coverage for Plaintiffs with Arch Insurance Company and/or Arch Insurance Group ("Arch") based in Kansas City, Missouri. *Id.* ¶ 12. Bates also obtained financing for Plaintiffs under a Premium Finance Agreement with Defendant Westfield Bank, FSB ("Westfield") that paid Plaintiff's entire annual insurance premium to Arch. *Id.* ¶ 14. In turn, Plaintiffs were to make monthly premium payments to Westfield. *Id.* Once insurance coverage was obtained for Long Excavating in March 2016, Plaintiffs began making the periodic insurance premium payment and engaged in logging work in Bullock County, Alabama. *Id.* ¶ 15.

The insurance policy covered multiple pieces of equipment owned by Long Excavating including a 1988 John Deere Skidder Model 648D and a 2007 Hydro-Ax 2470. *Id.* ¶ 16. In May of 2016, Plaintiffs made an insurance claim for the 1988 John Deere Skidder that was destroyed in a fire loss, and Arch paid the claim as a covered loss. *Id.* ¶ 17. In April 2016, Plaintiffs added a 2013 John Deere skidder Model 748H, which increased the total monthly premium from $526.74 to $952.25. *Id.* ¶ 18.

Sometime prior to July 8, 2016, Plaintiff Long Excavating failed to timely pay a monthly insurance premium payment. *Id.* ¶ 19. On July 8, Westfield mailed Long Excavating a Notice of Intent to Cancel Insurance due to the unpaid premium. *Id.* ¶ 20. Thereafter, Long Excavating made the premium payment, and Long Excavating's insurance coverage with Arch was reinstated. *Id.* In July 2016, Plaintiffs decided to sell the 2013 John Deere skidder and the portion of the lump sum premium payment for the John Deere skidder was returned to Westfield. *Id.* ¶ 21.

Again on September 8, 2016, Plaintiff Long Excavating failed to make a timely monthly insurance premium payment, and Westfield sent a Notice of Intent to Cancel Insurance. *Id.* ¶ 22. The Notice of Intent to Cancel Insurance notified Long Excavating that if the outstanding premium

payment was not received by September 23, 2016, Long Excavating's coverage would be canceled effective September 23, 2016. *Id.* Two days prior, on September 21, 2016, Westfield received $1,572.37 payment in returned premium from Arch as a result of Plaintiffs' sale of the 2013 John Deere skidder. *Id.* ¶ 23. On September 23, 2016, Westfield issued a Notice of Cancellation that canceled insurance coverage for Long Excavating, effective 12:01 AM on September 23, 2016. *Id.* ¶ 24.

On Friday, September 30, 2016, Brock Cody called Bates and spoke with his insurance representative Germany, who instructed Brock Cody to immediately make payment to Westfield Bank in the amount of $1,763.72. *Id.* ¶¶ 25, 26. She represented that the payment would satisfy all outstanding insurance premiums for Long Excavating and would pay all future remaining premiums for Long Excavating to maintain coverage with Arch Insurance through April 2017. *Id.* ¶ 27. Specifically, Germany represented to Brock Cody that payment of $1,763.72 would allow his insurance coverage with Arch Insurance to be reinstated, as it had been in the past, and that the equipment with Long Excavating would be covered. *Id.* ¶ 28. Brock Cody made the payment on Friday, September 30, 2016, and the payment posted on Monday, October 3, 2016. *Id.* ¶ 30.

On October 3 and 7, 2016, Brock Cody spoke with Germany who assured him that the coverage will be reinstated. ¶¶ 31–35. Long Excavating continued logging operations based on Germany's representations. ¶ 36. On October 14, 2016, unbeknownst to the Plaintiffs, Germany learned that Long Excavating's insurance coverage would not be reinstated and that Long Excavating had no insurance coverage. ¶ 37. Germany failed to communicate to Brock Cody or Charles Stewart Long, Jr., that the insurance coverage for Long Excavating was not reinstated, and that as a result, Long Excavating had no insurance coverage for its equipment. ¶ 38. Germany and Bates failed to procure replacement coverage for Long Excavating. ¶ 40.

.       On October 20, 2016, while engaged in logging operations, Long Excavating's 2007 Hydro-Ax Model 2470 was totally destroyed by fire. *Id.* ¶ 41. Brock Cody immediately made a claim to Bates for the fire loss. *Id.* ¶ 42. Thereafter, Germany communicated to Charles Long, Jr., and Brock Cody that Long Excavating's insurance coverage was not reinstated, that no replacement coverage had been procured for the Plaintiffs, and that there was no coverage for the October 20, 2016 loss. *Id.* ¶ 43.

### III.     Legal Standard

Federal Rule of Civil Procedure 8 provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleader must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[D]etailed factual allegations" are not required, but mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are not enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

### IV.     Analysis

Westfield moves to dismiss Plaintiffs' breach of contract claim arguing Brock Cody and Charles Long, Jr. lack standing to sue under the Premium Finance Agreement as they are not parties to the Agreement. (Doc. 55 at 13). Westfield additionally argues that given Long Excavating twice defaulted on the Premium Finance Agreement, Westfield was entitled under the Agreement to apply the September 2016 refund to Long Excavating's remaining secured debt and was not obligated to apply the refund to the overdue August 2016 payment. *Id.* at 5–13.

5

Plaintiffs cite to the following representations and warranties contained in the Premium Finance Agreement to support their position that Westfield's motion should be denied.

> To hold in trust for LENDER any payments made or credited to the Borrower through or to the undersigned, directly, indirectly, actually or constructively by any of the insurance companies and to pay the monies to LENDER upon demand to satisfy the then outstanding indebtedness of the Borrower and that any lien the undersigned now has or hereafter may acquire on any returned premium arising out of the above listed insurance policies is subordinated to LENDER's lien or security interest therein …

(Doc. 57 at 4). At issue is the meaning of "satisfy the then outstanding indebtedness of the Borrower." Plaintiffs contend the returned premium payment should have been applied to the "then outstanding indebtedness" which, as of September 21, 2016, was the August premium payment. (Doc. 57 at 2–3).

In appropriate cases, contract provisions can be construed and applied to alleged facts as a matter of law, allowing disposition of such cases at the motion to dismiss stage. Here, however, ambiguities in the language of the Agreement, the parties' course of conduct and application of the universal obligation of good faith dealing do not support making a ruling on the viability of Plaintiffs' claims against Westfield prior to development of a full record. *See Novoneuron Inc. v. Addiction Research Inst., Inc.*, 326 F. App'x 505, 509 (11th Cir. 2009) (quoting *Frulla v. CRA Holdings, Inc.*, 543 F.3d 1247, 1252 (11th Cir. 2008)) (dismissal of complaint found improper where Agreement was "susceptible to two different interpretations, each one of which is reasonably inferred from the terms of the contract"). Accordingly, the Court declines, at this time, to make a definitive ruling as to the proper application of the terms of the Premium Finance Agreement in reference to the bank's rights and obligations as to funds received in the circumstances evident here.

With respect to the individual Plaintiffs, issues were raised in the course of argument as to their status as guarantors of the corporate obligations and potential third party beneficiaries of the Premium Finance Agreement. Those issues, while potentially valid, are not adequately alleged in the Second Amended Complaint. As to their claims, therefore, they will be allowed a final opportunity to amend their complaint to include whatever facts they can muster as to their relationship to the LLC, the financing, and any personal guarantees or other liability they may face related to the claims in this case.

**V.     Conclusion and Order**

For the reasons stated, it is hereby **ORDERED**:

Westfield Bank, FSB's Motion to Dismiss Second Amended Complaint (Doc. 54) is **granted in part** as it relates to the claims of the individual Plaintiffs, Brock Cody and Charles Stewart Long, Jr.  Plaintiffs may file a Third Amended Complaint within 14 days to allege additional facts related to the standing and claims of the individual Plaintiffs as discussed above. (Or Plaintiffs may indicate there will be no further amendment).  Defendants shall file responses within 14 days of the amendment.

In all other respects, Westfield Bank, FSB's Motion to Dismiss Second Amended Complaint (Doc. 54) is **denied**.

**DONE** and **ORDERED** this 23rd day of October 2018.

*/s/ David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE